OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Bresnik, Appellee, v. Beulah Park Limited Partnership, Inc.
et al., Appellants
[Cite as Bresnik v. Beulah Park Ltd. Partnership, Inc.
(1993),    Ohio St.3d    .]
Horse racing -- R.C. Chapter 3769 and its accompanying
regulations do not abolish common-law right of proprietors to
exclude individuals form their property.
R.C. Chapter 3769 and its accompanying regulations do not
     abolish the common-law right of proprietors to exclude
     individuals from their property.
 (No. 92-1130 -- Submitted May 26, 1993 -- Decided September 15,
1993.)
     Appeal from the Court of Appeals for Franklin County, No.
91AP-1068.
     This case arises from a dispute over the right of an owner
of a private racetrack to exclude a state licensee from its
premises. The facts stated below are as alleged in the
complaint.  Appellee, Edward Bresnik, held a valid license as a
jockey agent from the Ohio State Racing Commission.  This
license allowed appellee to represent jockeys in their racing
arrangements at state-licensed horse racing tracks.  Appellee
had oral contracts to represent two jockeys, Luis Gonzalez and
Robert McWhorter.
     Appellants, Beulah Park Limited Partnership, Inc., Buckeye
Turf Club, Inc. and Capital Racing Club, Inc. ("Beulah Park")
operate a thoroughbred racetrack pursuant to a permit issued by
the Ohio Sate Racing Commission.
     On February 3, 1991, appellee  was informed by a security
officer that he was no longer permitted on the grounds of
Beulah Park.
     Due to this exclusion, the appellee, on February 25, 1991,
filed a complaint in the Court of Common Pleas of Franklin
County, alleging tortious interference with a business
relationship.  The appellee also requested a temporary
restraining order and a preliminary injuction to prevent Beulah
Park from barring his entry into the race park.  Beulah Park
filed a motion to dismiss the complaint for failure to state a
claim, which the trial court granted.

Appellee then appealed to the Court of Appeals for Franklin County. The court of appeals reversed the trial court's judgment, and remanded the case for further proceedings. Beulah Park then filed a notice of appeal with the Ohio Supreme Court. The cause is now before this court pursuant to the allowance of a motion to certify the record.

Mary Joseph Maxwell, for appellee.

Wiles, Doucher, Van Buren & Boyle Co., L.P.A., James M. Wiles and Jay B. Eggspuehler; and Timothy P. McCarthy, for appellants.

Bricker & Eckler and Catherine M. Ballard, urging affirmance for amicus curiae, Horseman's Benevolent and Protective Association.

Berry & Shoemaker, John F. Berry and D. Lewis Clark, Jr., urging affirmance for amicus curiae, Daniel A. Frasher.

Chester, Hoffman, Willcox & Saxbe, John J. Chester, Roderick H. Willcox and Donald C. Brey, urging reversal for amici curae, Scioto Downs, Inc. and Mid-America Racing Association, Inc.

Arter & Hadden, John B. Lewis and Lois J. Cole, urging reversal for amici curiae, Thistledown Racing Club, Inc., Randall Racing Club, Inc., Summit Racing Club, Inc. and Cranwood Racing Club, Inc.

Carter, Ledyard & Milburn, Jack Kaplan and Robert C. Malaby; and H. Bruce Talbott, urging reversal for amicus curiae, Thoroughbred Racing Protective Bureau.

Pfeifer J.   Beulah Park has a common-law right to exclude persons from its business premises absent specific legislative language to the contrary. The Revised Code contains no such language.

Appellee contends that R.C. Chapter 3769, which empowers the Ohio State Racing Commission with the right to exclude jockey agents from racetracks, abrogates any common-law rights of racetrack owners to exclude jockey agents from their premises. Appellee also argues that Ohio Adm. Code 3769-2-05 and 3769-4-22(B) authorize racing stewards to exclude jockey agents from a racetrack, and, thus, abolish Beulah Park's common-law right. We disagree.

As the late Justice Thurgood Marshall noted, the common-law right to exclude has long been a fundamental tenet of real property law:

"The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." Loretto v. Teleprompter Manhattan CATV Corp. (1982), 458 U.S. 419, 435, 102 S.Ct. 3164, 3176, 73 L. Ed.2d 868, 882.

Proprietors of private enterprises, such as Beulah Park, possess this right. Fletcher v. Coney Island, Inc. (1956), 165 Ohio St. 150, 59 O.O. 212, 134 N.E.2d 371. In Fletcher, this court held at paragraph one of the syllabus that:

"At common law, proprietors of private enterprises such as places of amusement and entertainment can admit or exclude whomsoever they please, and their common-law right continues until changed by legislative enactment."

Because horse racing tracks certainly qualify as "places

of amusement and entertainment," Beulah Park possesses the common-law right to exclude whomsoever it pleases, provided the General Assembly has not abolished that right.

Contrary to appellee's assertion, R.C. Chapter 3769 and its accompanying regulations do not abolish the common-law right of proprietors to exclude individuals from their property. Not every statute is to be read as an abrogation of the common law. "Statutes are to be read and construed in the light of and with reference to the rules and principles of the common law in force at the time of their enactment, and in giving construction to a statute the legislature will not be presumed or held, to have intended a repeal of the settled rules of the common law unless the language employed by it clearly expresses or imports such intention." (Emphasis added.) State v. Sullivan (1909), 81 Ohio St. 79, 90 N.E. 146, paragraph three of the syllabus.

The rules and statute cited by the appellee provide a right to exclude to the racing commission and racing stewards, who are not addressed by the common law. This does not mean that racetrack owners who possessed this right at common law have lost that right due to rules and statutes providing the same right to others. R.C. Chapter 3769 and its accompanying regulations supplement the common law by providing the racing commission and stewards with a right to exclude jockey agents from a racetrack in addition to the right to exclude held by the proprietors of the track. Thus, the decision of the court of appeals is reversed.

Judgment reversed.

Moyer, C.J., Douglas, Resnick and F.E. Sweeney, JJ., concur.

A.W. Sweeney and Wright, JJ., dissent.

A. William Sweeney, J., dissenting. While at first blush the underlying theme of the majority's position appears unassailable, i.e., that racetrack operators should be permitted to control whoever is on their premises so long as such control is not motivated by discrimination on grounds of race, color, religion, etc., I believe a closer examination of the Revised Code and related Administrative Code provisions compels a different result. Since I believe the court of appeals below correctly analyzed the statutory language and manifest intent of the General Assembly in this realm, I must respectfully dissent from the majority opinion.

The majority asserts that appellant Beulah Park has a "common-law right to exclude whomsoever it pleases," since racetracks qualify as "places of amusement and entertainment." First of all, however, the case upon which the majority relies for this proposition, Fletcher v. Coney Island, Inc. (1956), 165 Ohio St. 150, 59 O.O. 212, 134 N.E. 371, paragraph one of the syllabus, is readily distinguishable from the cause sub judice. Fletcher dealt with the exclusion of mere patrons of amusement facilities, whereas the appellee herein was on the racetrack grounds engaged in his employment by virtue of his license, which is authorized and regulated by the Ohio State Racing Commission. Second, assuming, arguendo, that racetracks qualify as the type of place characterized by the majority, a review of the pertinent statutes and regulations reveals that racetracks are a highly regulated industry in this state,

unlike ordinary places of amusement or entertainment.

R.C. 3769.03 provides as follows:

"The state racing commission shall prescribe the rules and conditions under which horse racing may be conducted ***.

"***

"The state racing commission may issue, deny, suspend, or revoke licenses to such persons engaged in racing and to such employees of permit holders as is in the public interest for the purpose of maintaining a proper control over horse-racing meetings.  The commission may also, as is in the public interest for the purpose of maintaining proper control over horse-racing meetings, rule any person off a permit holder's premises.  ***

"***

"With respect to the issuance, denial, suspension, or revocation of a license to a participant in horse racing, the action of the commission shall be subject to Chapter 119. of the Revised Code. ***"  (Emphasis added.)

As I see it, the foregoing statutory language gives the State Racing Commission plenary power over the regulation of horse racing, including the power to determine who may be ruled off a permit holder's premises.

In the exercise of the regulatory power granted by the legislature, the State Racing Commission promulgated Ohio Adm. Code 3769-2-05, which provides:

"All thoroughbred racing in Ohio over which the commission has jurisdiction and supervision shall be conducted under the rules and regulations which the commission has set forth for such racing.  If any case occurs which is not provided for in the rules of the Ohio state racing commission, the matter shall be determined by the stewards or by the commission as the case may be."

Additionally, Ohio Adm. Code 3769-4-22(B) appears to grant all power to the race stewards with regard to matters concerning licensees of the commission:

"The stewards *** shall determine all questions with regard to racing arising during the meeting *** and in such questions their orders shall supersede the orders of the other officials of the permit holder."

Furthermore, stewards "have general supervision over all other persons licensed by the Ohio state racing commission while such persons are on the premises of a permit holder." Ohio Adm. Code 3769-4-26(B).  Among the licensed persons subject to supervision by the steward are the track's general manager and head of security.  Ohio Adm. Code 3769-2-24.

In my view, R.C. Chapter 3769 and the supporting Administrative Code rules clearly restrict a racetrack operator's power to control persons on its property, because persons involved in racing cannot enter the racetrack grounds unless they are licensed by the commission.  Ohio Adm. Code 3769-2-27(A).  Assuming, arguendo, that racetrack operators had a common-law right to exclude whomever they please from their premises, I believe that such prior right was clearly and substantially altered by R.C. Chapter 3769 in its scheme of licensing and regulation by the State Racing Commission.

Given the extensive regulatory scheme with respect to horse racing, I believe that a licensee, such as plaintiff,

excluded by a track operator deserves the type of due process that the statutes and rules allow when a steward or an agent of the State Racing Commission excludes a licensee from a permit holder's premises.  However, by adopting the position of appellants, the majority holds that a licensee must prove illegal discrimination in order to obtain any relief for a wrongful exclusion.  In essence, the majority decision herein grants permit holders the power to exclude anyone for any other reason.  However, such a position, and the reasoning behind it, should not be countenanced by this court, especially in light of several illuminating examples provided by amicus curiae, Horseman's Benevolent and Protective Association, in support of appellee:

"For example, the Permit Holder could arbitrarily exclude a licensed trainer from the racetrack premises because the trainer has objected to the safety of the racetrack surface.  The Permit Holder could also arbitrarily exclude a licensed owner from the racetrack premises because the owner brought suit against the Permit Holder due to injuries sustained as a result of such unsafe conditions.  The unfettered ability of the Permit Holder to act arbitrarily in excluding these licensed individuals from the racetrack premises would have the [e]ffect of not only barring such individuals from earning a livelihood in the horse racing industry, but could also be used as an unfair business practice which imposed unsafe or hazardous working conditions upon both licensed horsemen and their horses.

"Clearly, the Ohio legislature envisioned that this heavily regulated industry would be governed by the State in a fair and impartial manner rather than by private individuals whose actions would be without recourse for those affected."

However, under the sweeping language of the majority opinion herein, a racetrack operator is judge, jury and executioner to anyone who enters its grounds, regardless of whether such person is licensed to be there by the State Racing Commission.  Clearly, this is not what the General Assembly intended when it enacted R.C. Chapter 3769.  Nevertheless, under today's majority opinion, the power of the State Racing Commission is subject to the whim and caprice of the individual racetrack operators.

The better view, in my opinion, was cogently expressed by the court of appeals in its unanimous decision below:

"The state has issued a license authorizing plaintiff to act as a jockey agent at the racetrack in question, which necessarily requires him to enter the permit holder's premises in order to make mandatory reports.  Under such circumstances, the apparent arbitrary exclusion of plaintiff by defendants from the permit premises is in conflict with the regulations and statutes.  As to access to the premises by persons licensed by the commission to engage in racing upon the premises, the common law power of the permit holder over his premises has been altered.  By applying for and accepting a permit to conduct horse racing, defendants have surrendered a substantial portion of the power and control they otherwise would have over the permit premises and expressly agree to abide by the rules and regulations of the commission and the regulations and orders of the stewards.

"Although there is no express provision in the regulations requiring a permit holder to admit the holder of a license issued by the commission to engage in some aspect of racing on the permit premises, it is a necessary corollary to the issuance of the license, which necessarily requires the person for the proper utilization of that license to enter upon the permit premises."

Based on all of the foregoing, I would affirm the judgment of the court of appeals below.

Wright, J., concurs in the foregoing dissenting opinion.