THE STATE EX REL. JOBSOHIO *v.* GOODMAN, DIR.

[Cite as *State ex rel. JobsOhio v. Goodman,*

133 Ohio St.3d 297, 2012-Ohio-4425.]

*Cause dismissed—Relator essentially seeks a declaratory judgment or an advisory opinion on the constitutionality of 2011 Am.Sub.H.B. No. 1 and 2011 Am.Sub.H.B. No. 153.*

(No. 2012-1356—Submitted September 11, 2012—Decided September 28, 2012.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is an original action in mandamus by relator, JobsOhio, asking this court to (1) find that legislation authorizing the creation of JobsOhio to promote economic development in the state and to assume responsibility for the merchandising and sale of alcohol in the state is constitutional and (2) compel respondent, Ohio Department of Commerce Director David Goodman, to execute an agreement to transfer the state's liquor business to JobsOhio. We dismiss the cause because it does not raise a justiciable controversy, essentially seeking either a declaratory judgment or an advisory opinion on the constitutionality of the statute.

**Facts**

{¶ 2} The General Assembly enacted and Governor John Kasich signed 2011 Am.Sub.H.B. No. 1 ("H.B. 1"), effective February 18, 2011. Under H.B. 1, the governor is "authorized to form a nonprofit corporation, to be named 'JobsOhio,' with the purposes of promoting economic development, job creation, job retention, job training, and the recruitment of business to this state." R.C. 187.01. R.C. 187.01(B) through (D) provide that the governor is the chair of the

board of directors of JobsOhio and that he shall appoint the remaining eight directors.

{¶ 3} In accordance with R.C. 187.01, the governor filed articles of incorporation for JobsOhio with the secretary of state's office on July 5, 2011. According to its articles of incorporation, JobsOhio was organized and is to be operated "for the purposes of promoting economic development, job creation, job retention, job training, and the recruitment of business to the State of Ohio." The governor thereafter appointed people to serve on the board of directors for JobsOhio. R.C. 187.01(B) and 187.02. Pursuant to Section 5 of H.B. 1, the Ohio Department of Development ("ODOD") set aside $1,000,000 "to establish and operate the JobsOhio corporation established in Chapter 187. of the Revised Code." JobsOhio and ODOD negotiated and executed an "agreement for services" pursuant to R.C. 187.04(A), and that agreement was approved by the Controlling Board of the state.

{¶ 4} In June 2011, the General Assembly enacted and the governor signed 2011 Am.Sub.H.B. No. 153 ("H.B. 153"), which, inter alia, authorized the state to transfer to JobsOhio all or a portion of its alcohol-distribution system for a transfer price payable by JobsOhio to the state. *See* R.C. 4313.02(A) and 4313.01(A).

{¶ 5} Pursuant to R.C. 4313.02(E), as enacted in H.B. 153, JobsOhio, the Ohio Office of Budget and Management ("OBM"), and the Ohio Department of Commerce ("ODC"), negotiated a contract to provide for the continuing operation of the state's alcohol business by the state's division of liquor control. The terms of the "operations services agreement" were finalized, and it was approved by the Controlling Board.

{¶ 6} In September 2011, in accordance with R.C. 4313.02(C)(2), JobsOhio and OBM began negotiating the terms of a "franchise-and-transfer agreement" in which the state would grant to JobsOhio or its nonprofit corporate

2

affiliate, in exchange for a payment from JobsOhio to the state, a franchise on the state's liquor business for up to 25 years. As required by the statute, respondent, ODC Director David Goodman, was consulted regarding the terms of the agreement. R.C. 4313.02(C)(2).

{¶ 7} After negotiations were concluded, JobsOhio and its wholly owned subsidiary, JobsOhio Beverage System, signed the franchise-and-transfer agreement on August 7, 2012. OBM Director Timothy Keen also signed the agreement on August 7. *See* R.C. 4313.02(C)(2).

{¶ 8} By letter dated August 8, 2012, Mark Kvamme, the JobsOhio interim president and chief investment officer, forwarded a copy of the signed franchise-and-transfer agreement to ODC Director Goodman for his signature and advised Goodman that his "signature is the only step remaining before we may proceed with the proposed transfer."

{¶ 9} By letter dated and delivered August 9, 2012, Goodman refused to execute the franchise-and-transfer agreement. His letter explains that although he supports JobsOhio and its mission, acknowledges that the agreement and the negotiating process complied with R.C. Chapter 4313, and questions the validity of constitutional challenges raised against H.B. 1 and H.B. 153, he believes that his oath of office to uphold the Ohio Constitution precludes him from executing the agreement until the Ohio Supreme Court addresses the merits of the constitutional claims.

{¶ 10} On the day following ODC Director Goodman's refusal to sign the franchise-and-transfer agreement, August 10, 2012, JobsOhio filed this action for a writ of mandamus to "be issued to Respondent Goodman finding that the Legislation [H.B. 1 and 153] is constitutional and ordering Respondent to execute the Franchise and Transfer Agreement on behalf of the State, in accordance with R.C. § 4313.02(C)(2)." Goodman filed an answer and a motion for judgment on the pleadings. In his answer, Goodman admits all the pertinent facts and concurs

with JobsOhio's allegation that "[e]xercise of the Court's jurisdiction is necessary to allow [JobsOhio] the opportunity to timely adjudicate its claim against [Goodman], and to provide a swift and conclusive resolution to any and all questions regarding the constitutionality of the Legislation." JobsOhio filed a memorandum in opposition to Goodman's motion for judgment on the pleadings.

{¶ 11} This cause is now before the court for S.Ct.Prac.R. 10.5 determination.

**Analysis**

{¶ 12} We must now determine whether dismissal, an alternative writ, or a peremptory writ is appropriate. S.Ct.Prac.R. 10.5(C). Dismissal is required if it appears beyond doubt, after presuming the truth of all material factual allegations of JobsOhio's complaint and making all reasonable inferences in its favor, that JobsOhio is not entitled to the requested extraordinary relief in mandamus. *See State ex rel. Johnson v. Richardson*, 131 Ohio St.3d 120, 2012-Ohio-57, 961 N.E.2d 187, ¶ 12.

{¶ 13} For the reasons that follow, sua sponte dismissal of this case without reaching the merits of the constitutional claims is warranted.

{¶ 14} First, a review of the complaint—as well as Goodman's motion for judgment on the pleadings—indicates that the real object sought is a declaratory judgment, which this court lacks original jurisdiction to grant. *ProgressOhio.org, Inc. v. Kasich*, 129 Ohio St.3d 449, 2011-Ohio-4101, 953 N.E.2d 329, ¶ 2, citing *State ex rel. Ministerial Day Care Assn. v. Zelman*, 100 Ohio St.3d 347, 2003-Ohio-6447, 800 N.E.2d 21, ¶ 22 ("neither this court nor the court of appeals has original jurisdiction over claims for declaratory judgment"). If the allegations of a mandamus complaint indicate that the real object sought is a declaratory judgment, the complaint does not state a viable claim in mandamus and must be dismissed for lack of jurisdiction. *State ex rel. Miller v. Warren Cty. Bd. of Elections*, 130 Ohio St.3d 24, 2011-Ohio-4623, 955 N.E.2d 379, ¶ 21. In

assessing the true nature of a mandamus claim, we examine the complaint. *State ex rel. Obojski v. Perciak*, 113 Ohio St.3d 486, 2007-Ohio-2453, 866 N.E.2d 1070, ¶ 13. Although JobsOhio's complaint is couched in terms of compelling ODC Director Goodman to comply with his affirmative duty under R.C. 4313.02(C)(2) to execute the franchise-and-transfer agreement, it actually seeks an expedited ruling from this court declaring H.B. 1 and 153 constitutional, so as to preclude any further challenges.

{¶ 15} Second, mandamus is not available if the relator has an adequate remedy in the ordinary course of law. *State ex rel. Nickleson v. Mayberry*, 131 Ohio St.3d 416, 2012-Ohio-1300, 965 N.E.2d 1000, ¶ 2; R.C. 2731.05. JobsOhio has an adequate remedy by way of a declaratory-judgment action in common pleas court to raise its claim that H.B. 1 and 153 are constitutional. The cases that JobsOhio and Director Goodman cite in which the court decided the constitutionality of legislation in the context of mandamus cases, *see, e.g., State ex rel. Ohio Gen. Assembly v. Brunner*, 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912; *State ex rel. Duerk v. Donahey*, 67 Ohio St.2d 216, 423 N.E.2d 429 (1981); and *State ex rel. Shkurti v. Withrow*, 32 Ohio St.3d 424, 513 N.E.2d 1332 (1987), are distinguishable because in those cases, there was no evidence or inference of any agreement on the part of the parties to obtain an advisory opinion on the constitutionality of legislation. Instead, all the cited cases involved actual controversies between genuinely adverse parties.

## Conclusion

{¶ 16} Based on the foregoing, it appears beyond doubt that JobsOhio's mandamus claim does not properly invoke the original jurisdiction of the court. We will not decide constitutional claims raised by parties who seek an advisory declaratory judgment for which they have adequate remedies in the ordinary course of law. Thus, we sua sponte dismiss the cause. This result renders moot

all pending motions, including the motion to intervene and the motions of amici curiae for leave to submit briefs on the merits of the constitutional claims.

Cause dismissed.

O'CONNOR, C.J., and LUNDBERG STRATTON, LANZINGER, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents.

CUPP, J., dissents and would (1) grant the motions of the Ohio Manufacturers' Association, the Columbus Partnership, Ohio Bankers League, the Ohio Chamber of Commerce, and the Ohio Council of Retail Merchants for leave to file briefs in support of relator, (2) grant the motion to intervene as respondents filed by ProgressOhio.org, Senator Michael Skindell, and Representative Dennis Murray Jr., (3) expressly reserve ruling on the motion to dismiss filed by the prospective intervenors at this time, and (4) grant an alternative writ and issue a schedule for the presentation of evidence and briefs.

O'DONNELL, J., not participating.

———————————

**PFEIFER, J., dissenting.**

{¶ 17} I dissent. I would grant an alternative writ. This court's consideration of original actions that address the constitutionality of statutes is "limited to exceptional circumstances that demand early resolution." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 515, 715 N.E.2d 1062 (1999) (Pfeifer, J., concurring). *See also State ex rel. Ohio AFL-CIO v. Voinovich*, 69 Ohio St.3d 225, 631 N.E.2d 582 (1994); *State ex rel. Ohio AFL-CIO v. Ohio Bur. of Workers' Comp.*, 97 Ohio St.3d 504, 2002-Ohio-6717, 780 N.E.2d 981. This is one of those extraordinary cases.

———————————

Squire Sanders, L.L.P., Aneca E. Lasley, and Gregory W. Stype; Organ, Cole & Stock, L.L.P., and Douglas R. Cole, for relator.

Michael DeWine, Attorney General; Porter, Wright, Morris & Arthur, L.L.P., James A. King, and L. Bradfield Hughes, for respondent.

_____