[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *ProgressOhio.org, Inc. v. JobsOhio*, Slip Opinion No. 2014-Ohio-2382.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION No. 2014-Ohio-2382

PROGRESSOHIO.ORG, INC., ET AL., APPELLANTS, *v.* JOBSOHIO ET AL.,
APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *ProgressOhio.org, Inc. v. JobsOhio,* Slip Opinion No. 2014-Ohio-2382.]**

*Standing—Constitutionality of JobsOhio Act—R.C. 187.01 et seq. and 4313.01 et seq.—Plaintiffs failed to show that they have a personal stake in the outcome of the litigation or a cognizable basis for statutory standing.*

(No. 2012-1272—Submitted November 6, 2013—Decided June 10, 2014.)

APPEAL from the Court of Appeals for Franklin County, No. 11AP-1136, 2012-Ohio-2655.

_____

FRENCH, J.

{¶ 1} In this appeal, we consider whether appellants, ProgressOhio.org, Inc., Michael J. Skindell, and Dennis E. Murray Jr., have standing to challenge the JobsOhio Act, R.C. 187.01 et seq. and 4313.01 et seq. We have long held that a party wishing to sue must have a direct, personal stake in the outcome of his or her case; ideological opposition to a program or legislative enactment is not enough. Applying that precedent here, we conclude that appellants have failed to

show that they have any personal stake in the outcome of this litigation. They therefore lack the direct injury required for common-law standing. Appellants similarly fail to allege a cognizable basis for statutory standing. Accordingly, we conclude that appellants are not proper parties to challenge the constitutionality of the JobsOhio legislation.

*Facts and Procedural History*

{¶ 2} This case concerns appellants' constitutional challenge to the JobsOhio Act. The act authorized the creation of a nonprofit corporation, JobsOhio, for "the purposes of promoting economic development, job creation, job retention, job training, and the recruitment of business" to Ohio. R.C. 187.01. An appropriation from the Department of Development initially funded and established JobsOhio. 2011 Am.Sub.H.B. No. 1, Section 5. Thereafter, JobsOhio was given the right to purchase the state's liquor distribution and merchandising operations and to operate from revenues of the liquor enterprise. R.C. 4313.02(A).

{¶ 3} Appellant, ProgressOhio.org, Inc., is an entity organized under 26 U.S.C. 501(c)(4). It was "created to provide a progressive voice for Ohio citizens[,] * * * to inform and educate the public about progressive ideals, values and politics [and] to ensure that the government follows the dictates of the U.S. and Ohio Constitutions." Joining ProgressOhio as appellants are Michael J. Skindell, a member of the Ohio Senate, and Dennis E. Murray, a former member of the Ohio House of Representatives.

{¶ 4} Appellants filed this action for declaratory and injunctive relief in the Franklin County Common Pleas Court. Appellants sought a declaration that the act violated the Ohio Constitution and an injunction prohibiting the formation and continued operation of JobsOhio. Appellants primarily claimed that JobsOhio violated constitutional prohibitions on spending, corporate creation, and corporate investment.

**{¶ 5}** The trial court dismissed the case, finding that appellants lacked standing to sue. The Tenth District Court of Appeals agreed. It held that appellants lacked the personal stake and direct injury necessary for standing. 2012-Ohio-2655, 973 N.E.2d 307, ¶ 19 (10th Dist.). It also held that appellants did not present an issue of public interest great enough to otherwise warrant standing under *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999). 2012-Ohio-2655, 973 N.E.2d 307, at ¶ 32.

**{¶ 6}** This court accepted appellants' discretionary appeal. The only issue before us is whether appellants have standing to bring this action.

*Analysis*

**{¶ 7}** "Before an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27. Traditional standing principles require litigants to show, at a minimum, that they have suffered "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Moore v. Middletown,* 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22. Standing does not depend on the merits of the plaintiff's claim. *Id.* at ¶ 23. Rather, standing depends on whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case. *Clifton v. Blanchester,* 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15; *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas,* 35 Ohio St.2d 176, 178-179, 298 N.E.2d 515 (1973).

**{¶ 8}** Appellants concede that they have no personal stake in the outcome of this litigation. Consequently, they are admittedly unable to meet the requirements to establish traditional standing. Instead, appellants claim that they possess standing through four alternative means: (1) the public-right doctrine, (2)

taxpayer standing, (3) statutory standing under a portion of the Declaratory Judgment Act, R.C. 2721.03(A), and (4) statutory standing under a portion of the JobsOhio Act, R.C. 187.09. We disagree on all counts, which we address in turn.

## I. *The Public-Right Doctrine*

{¶ 9} First, appellants claim that they have standing under the public-right doctrine outlined in *Sheward,* 86 Ohio St.3d 451, 715 N.E.2d 1062. The public-right doctrine represents "an exception to the personal-injury requirement of standing." *Id.* at 503. The doctrine provides that "when the issues sought to be litigated are of great importance and interest to the public, they may be resolved in a form of action that involves no rights or obligations peculiar to named parties." *Id.* at 471. To succeed in bringing a public-right case, a litigant must allege "rare and extraordinary" issues that threaten serious public injury. (Emphasis deleted.) *Id.* at 504. Not all allegedly illegal or unconstitutional government actions rise to this level of importance. *Id.* at 503.

{¶ 10} Appellants do not have standing under the public-right doctrine. As *Sheward* makes clear, the public-right doctrine applies only to original actions in mandamus and/or prohibition. *Id.* at paragraph one of the syllabus ("Where the object of *an action in mandamus and/or prohibition* is to procure the enforcement or protection of a public right, the relator need not show any legal or special individual interest in the result * * *" [emphasis added]). It does not apply to declaratory-judgment actions filed in common pleas courts, and we have never used the doctrine in such a case.

{¶ 11} Nor could we. The Ohio Constitution expressly requires standing for cases filed in common pleas courts. Article IV, Section 4(B) provides that the courts of common pleas "shall have such original jurisdiction over all *justiciable matters*." (Emphasis added.) A matter is justiciable only if the complaining party has standing to sue. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 41 ("It is fundamental that a party

commencing litigation must have standing to sue in order to present a justiciable controversy"). Indeed, for a cause to be justiciable, it must present issues that have a "direct and immediate" impact on the plaintiffs. *Burger Brewing Co. v. Liquor Control Comm., Dept. of Liquor Control,* 34 Ohio St.2d 93, 97-98, 296 N.E.2d 261 (1973). Thus, if a common pleas court proceeds in an action in which the plaintiff lacks standing, the court violates Article IV of the Ohio Constitution. Article IV requires justiciability, and justiciability requires standing. These constitutional requirements cannot be bent to accommodate *Sheward*.

{¶ 12} Even assuming that *Sheward* could apply to common-pleas actions, it would not apply in this case. Appellants make little effort to present a rare and extraordinary public issue. Instead, they assert that citizens should be able to challenge any alleged constitutional violations, regardless of rarity or magnitude. Appellants' position is incompatible with *Sheward*, which clearly states that not all allegations of constitutional harm warrant an exception to the personal-stake requirement of standing. 86 Ohio St.3d at 503, 715 N.E.2d 1062; *see also State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, quoting *Sheward* at 504 (constitutional challenge to state spending measures was "not a 'rare and extraordinary case' warranting invocation of the public-right exception to the personal-stake requirement of standing"). Thus, another reason that appellants' *Sheward* argument fails is that they do not show the type of rare and extraordinary public-interest issue required by *Sheward*. Accordingly, we find that appellants cannot establish standing under the public-right doctrine.

{¶ 13} We recognize that this case presents broader concerns about the overall validity of *Sheward* and the public-right doctrine. *Sheward* was a deeply divided, four-to-three decision, and it remains controversial today. JobsOhio and its amici criticize *Sheward* heavily, urging that we take this opportunity to overrule *Sheward* and settle the law of standing in Ohio. Nevertheless, given our

holding today, we must decline JobsOhio's invitation to reevaluate *Sheward.* *Sheward* does not apply in this common-pleas action, and thus we express no opinion as to *Sheward*'s continued vitality.

## II. *Taxpayer Standing*

**{¶ 14}** Next, appellants argue that they have common-law taxpayer standing to challenge the JobsOhio Act. We conclude, however, that appellants have waived any claim to taxpayer standing by failing to raise the issue in the lower courts.

**{¶ 15}** The trial court made two rulings on the issue of taxpayer standing: (1) that appellants never asserted taxpayer standing in their complaint, and (2) that, regardless, appellants failed to qualify for taxpayer standing. Appellants did not appeal that holding, and they did not brief or argue the issue of taxpayer standing in the court of appeals. Instead, appellants' assignments of error focused only on the public-right doctrine, legislative standing, and statutory standing under R.C. 187.09.

**{¶ 16}** Appellants maintain that they have not waived the issue of taxpayer standing because their broad proposition of law ("Plaintiffs have standing to bring this action") allows them to assert all possible bases for standing. Even if we were to agree that appellants' proposition of law is broad enough to encompass the issue of taxpayer standing, appellants still waived that claim by not raising and arguing it in the court of appeals. *See State ex rel. E. Cleveland Fire Fighters' Assn., Loc. 500, Internatl. Assn. of Fire Fighters v. Jenkins,* 96 Ohio St.3d 68, 2002-Ohio-3527, 771 N.E.2d 251, ¶ 12 (holding that appellant waived a claim of standing by failing to raise it in the court of appeals). Accordingly, we reject appellants' purported taxpayer standing.

## III. *Standing Under the Declaratory Judgment Act*

**{¶ 17}** In addition to standing authorized by common law, standing may also be conferred by statute. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75, 495

N.E.2d 380 (1986). To that end, appellants assert that they have standing under R.C. 2721.03, a portion of the Declaratory Judgment Act. We conclude that appellants have similarly waived any claim to standing under R.C. 2721.03.

{¶ 18} Appellants raised no claim of standing under R.C. 2721.03 in the lower courts. They argue, however, that they must be able to raise the issue now because of developments in the law—specifically, this court's decision in *Moore,* 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977. In *Moore,* this court held that property owners could bring a declaratory-judgment action to challenge the constitutionality of rezoning if the owners pled an injury caused by the rezoning. *Id.* at ¶ 56. In dicta, the majority addressed the court of appeals' holding that R.C. 2721.03 does not itself determine standing to bring a declaratory-judgment action: "Although it is true that R.C. Chapter 2721 is the legislative source of a cause of action for declaratory relief, we do not necessarily agree that the statute does not confer standing." *Id.* at ¶ 48. This court did not, however, decide that question.

{¶ 19} The equivocal statement in *Moore* hardly qualifies as a change in law that warrants overlooking appellants' waiver here. But even if it did, appellants' statutory standing claim would still fail, as they do not meet the requirements of R.C. 2721.03. R.C. 2721.03 applies only to "person[s] *whose rights, status, or other legal relations are affected* by a constitutional provision [or] statute." (Emphasis added.) *See also Moore* at ¶ 49 (declaratory relief available only when there is a real, justiciable controversy and relief is necessary "to preserve the rights of the parties"). Indeed, the three prerequisites to declaratory relief are (1) a real controversy between the parties, (2) justiciability, and (3) the necessity of speedy relief to preserve the parties' rights. *Burger Brewing Co.*, 34 Ohio St.2d at 97, 296 N.E.2d 261, citing *Am. Life & Acc. Ins. Co. of Kentucky v. Jones,* 152 Ohio St. 287, 296, 89 N.E.2d 301 (1949). Appellants ignore these requirements. They do not show that they have any rights at stake or that speedy resolution will bring them any concrete relief. They

simply argue that they have an idealistic opposition to the government's "use of public fund[s] to prop up purely private corporations." This is insufficient under the Declaratory Judgment Act, and we reject appellants' contrary assertion.

IV. *Standing Under the JobsOhio Act*

{¶ 20} Finally, appellants contend that the JobsOhio Act itself, and particularly R.C. 187.09(B), cloaks them with standing to challenge JobsOhio. R.C. 187.09(B) sets out time and place requirements for challenging the constitutionality of the JobsOhio legislation and provides as follows:

> Except as provided in division (D) of this section, any claim asserting that [the JobsOhio Act] violates any provision of the Ohio Constitution shall be brought in the court of common pleas of Franklin county within ninety days after the effective date * * * of this section * * *.

{¶ 21} R.C. 187.09(B) makes no mention of standing. Nevertheless, appellants argue that the statute is ambiguous and that this court must broadly construe it to provide standing to avoid rendering the statute meaningless. Appellants claim that R.C. 187.09(B) is ambiguous because it contemplates that someone will have standing to challenge the JobsOhio Act, but does not specify who has this standing. We disagree.

{¶ 22} R.C. 187.09 conveys a clear and definite meaning. The statute unambiguously provides that with the exception of claims within the original jurisdiction of this court or a court of appeals, any constitutional challenge to the JobsOhio legislation must lie in the Franklin County Court of Common Pleas and must be brought within 90 days after September 29, 2011. R.C. 187.09(B) and (D). The fact that R.C. 187.09 is silent as to who has standing to maintain a constitutional challenge to the legislation does not render the statute ambiguous.

8

Nor will we read the statutory silence as clearly expressing an intention to abrogate the common-law requirements for standing. *See Bresnik v. Beulah Park Ltd. Partnership, Inc.,* 67 Ohio St.3d 302, 304, 617 N.E.2d 1096 (1993) (this court will not read a statute as abrogating the common law unless the statutory language clearly expresses or imports that intention). Accordingly, we reject appellants' argument that R.C. 187.09(B) grants them standing to challenge the JobsOhio Act.

V. *Appellants' Policy Concerns*

{¶ 23} Throughout their brief, appellants contend that it is a practical necessity for us to grant them standing. Unless we allow them to pursue this action, appellants argue, no one will ever be able to challenge JobsOhio or enforce the Ohio Constitution. We disagree.

{¶ 24} Appellants stress that they were the only litigants to file a lawsuit within the 90-day time frame set by R.C. 187.09(B). Thus, they argue, if this court does not grant appellants standing, no one will ever be able to challenge JobsOhio. Appellants are mistaken. Both R.C. 187.09(C) and (D) provide extended statutes of limitations for challenges to JobsOhio. R.C. 187.09(C) provides that "any claim asserting that any action taken by JobsOhio violates any provision of the Ohio Constitution shall be brought * * * within sixty days after the action is taken." And R.C. 187.09(D) allows aggrieved parties to bring an original action in this court, without any time limitation. Additionally, to the extent that the 90-day time limit in R.C. 187.09(B) is unconstitutional,[1] as appellants have suggested, a person with standing could still sue and challenge the

---

[1] The issue of whether the 90-day time limit is constitutional is not before us today. Although appellants initially asked this court to review the constitutionality of R.C. 187.09(B), we specifically declined to exercise our discretionary jurisdiction over that issue. 134 Ohio St.3d 1416, 2013-Ohio-158, 981 N.E.2d 883. And even if we had accepted the issue for review, appellants' lack of standing would still prevent us from considering it here.

time limitation as part of that suit. In short, appellants are not the last line of defense against JobsOhio, despite the dire picture they paint.

{¶ 25} Justice Pfeifer's dissent expresses similar concerns, erroneously concluding that today's decision "ensures that no court will ever address the question of the constitutionality of the JobsOhio legislation," because "[n]either the state, nor its counsel, nor the majority opinion has been able to conjure a realistic example of a person or entity that would have the requisite standing and inclination to bring a claim." The dissent's statements are demonstrably incorrect; in reality, all of the parties in this case—*including* appellants—identified multiple persons and entities that could potentially bring a claim. Thus, despite the dissent's protestations to the contrary, we do not hold, and the parties do not suggest, that no person could ever have standing to challenge JobsOhio. A proper party—i.e., one with legal standing—may unquestionably contest the constitutionality of JobsOhio. As to that proper party, the courthouse doors remain open.

*Conclusion*

{¶ 26} Appellants have no personal stake in the outcome of this litigation and therefore lack common-law standing to challenge the JobsOhio Act. The public-right doctrine cannot save appellants, as it does not apply to actions brought in common pleas courts. Appellants' alternative claims to statutory standing likewise fail.

{¶ 27} If and when an injured party seeks to challenge JobsOhio, we may entertain such a case. But those parties are not before us today. Appellants lack standing to bring this suit, and they may pursue it no further.

Judgment affirmed.

O'CONNOR, C.J., and WHITMORE and LANZINGER, JJ., concur.

KENNEDY, J., concurs in judgment only.

PFEIFER and O'NEILL, JJ., dissent.

BETH WHITMORE, J., of the Ninth Appellate District, sitting for O'DONNELL, J.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 28} I concur in the majority's judgment that ProgressOhio, Michael Skindell, and Dennis Murray lack standing, in this case, to challenge the constitutionality of R.C. 187.01 et seq. and 4313.01 et seq. ("the JobsOhio legislation"). However, I write separately to address the public-policy concerns that the majority summarily dismisses.

{¶ 29} The appellants argue that if they do not have standing, no one will be able to challenge the constitutionality of the JobsOhio legislation, because they are the only group to have done so within the 90-day statutory time limitation. R.C. 187.09(B). In dismissing the appellants' claim that they are the only ones who timely filed an action challenging the constitutionality of the JobsOhio legislation, the majority writes, "Appellants are mistaken. Both R.C. 187.09(C) and (D) provide extended statutes of limitations for challenges to JobsOhio." Majority opinion at ¶ 24. I disagree.

R.C. 187.09

{¶ 30} R.C. 187.09 provides:

(B) Except as provided in division (D) of this section, any claim asserting that any one or more sections of the Revised Code amended or enacted by H.B. 1 of the 129th general assembly, any section of Chapter 4313. of the Revised Code enacted by H.B. 153 of the 129th general assembly, or any portion of one or more of those sections, violates any provision of the Ohio Constitution shall be brought in the court of common pleas of Franklin county

within ninety days after the effective date of the amendment of this section by H.B. 153 of the 129th general assembly.

(C) Except as provided in division (D) of this section, any claim asserting that *any action taken by JobsOhio* violates any provision of the Ohio Constitution shall be brought in the court of common pleas of Franklin County within sixty days after the action is taken.

(Emphasis added.)

{¶ 31} The divisions within R.C. 187.09 are separate and distinct.

{¶ 32} Am.Sub.H.B. No. 1, effective February 18, 2011, and Am.Sub.H.B. No. 153, effective September 29, 2011, created JobsOhio. R.C. 187.09(B) sets forth a time limitation on challenging the constitutionality of the *creation of JobsOhio,* while division (C) sets forth a time limitation on challenging the constitutionality of an *action by JobsOhio*.

{¶ 33} The majority declares that an individual with proper standing could challenge the constitutionality of the 90-day time limitation in R.C. 187.09(B). But who could meet the justiciability requirement, because cases filed in a common pleas court require a concrete injury? *See Ohio Trucking Assn. v. Charles,* 134 Ohio St.3d 502, 2012-Ohio-5679, 983 N.E.2d 1262, quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451, 469-470, 715 N.E.2d 1062 (1999) (" 'In order to have standing to attack the constitutionality of a legislative enactment, the private litigant must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury' ").

{¶ 34} At oral argument, the state appellees, the governor, the directors of the development and the office of budget and management, and the treasurer

suggested that those holding the bonds secured by profits from the sale of liquor and liquor-permit holders may have standing under R.C. 187.09(C). However, those arguments ring hollow. Pursuant to R.C. Chapters 151 and 166, the state has authority only to issue a bond, while JobsOhio has authority only to *pay off* a bond, pursuant to R.C. 4313.02(B)(1). Moreover, only the proceeds from the sales of liquor flow through to JobsOhio, while the state retains the right the issue permits and regulate or sanction permit holders. *See State ex rel. JobsOhio v. Goodman,* 133 Ohio St.3d 297, 2012-Ohio-4425, 978 N.E.2d 153, ¶ 4, 5; R.C. 4313.02(E). Therefore, it is unclear how a party would have standing to challenge the constitutionality of the JobsOhio legislation, because it is the state that issues bonds and regulates the liquor business.

{¶ 35} However, while the appellants have raised valid policy concerns and the possibility exists that no one will have standing to bring an action pursuant to R.C. 187.09(B), those concerns and possibilities alone cannot confer standing on the appellants.

{¶ 36} Therefore, I concur in the majority's judgment.

———————————

**PFEIFER, J., dissenting.**

{¶ 37} With today's decision, this court for the third time has refused to determine the constitutionality of the JobsOhio legislation. In *ProgressOhio.org, Inc. v. Kasich,* 129 Ohio St.3d 449, 2011-Ohio-4101, 953 N.E.2d 329, this court said, "Not here," finding unconstitutional the provision in the original JobsOhio bill that required cases regarding the constitutionality of the legislation to be brought exclusively in this court. In *State ex rel. JobsOhio v. Goodman, 1*33 Ohio St.3d 297, 2012-Ohio-4425, 978 N.E.2d 153, this court said, "Not now," holding that the mandamus case brought by JobsOhio against Ohio Department of Commerce Director David Goodman was actually a declaratory-judgment action that should be brought first in the court of common pleas. Today, this court ends

all doubt about when it will determine the constitutionality of the JobsOhio legislation, essentially responding, "Not ever." Not here. Not now. Not ever.

**{¶ 38}** An Ohio citizen who possesses no personal stake in the outcome of a case other than ensuring that his or her government live up to the Ohio Constitution has a means to vindicate that cause: "This court has long taken the position that when the issues sought to be litigated are of great importance and interest to the public, they may be resolved in a form of action that involves no rights or obligations peculiar to named parties." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 471, 715 N.E.2d 1062 (1999).

**{¶ 39}** The majority reluctantly accepts the concept of public-right standing, but tries to find a way to nullify it in this case. First, the majority claims that the public-right doctrine applies only to actions in mandamus and or prohibition. This is based upon the partial quotation of a statement in Sheward: "Where the object of an action in mandamus and/or prohibition is to procure the enforcement of a public right, the relator need not show any legal or special individual interest in the result * * *." Majority opinion at ¶ 10. However, the full quote reads:

> Where the object of an action in mandamus and/or prohibition is to procure the enforcement or protection of a public right, the relator need not show any legal or special individual interest in the result, it being sufficient that the relator is an Ohio citizen and, as such, interested in the execution of the laws of this state.

*Sheward,* paragraph one of the syllabus.

**{¶ 40}** That statement from *Sheward* is about standing in general, and in no way limits public-right standing to mandamus or prohibition actions. The

14

object of the action is the essential element of public-right standing, not the type of suit used to bring the action.

{¶ 41} Further, as the court of appeals in this case pointed out, it is the nature of this court's jurisdiction that results in this court finding public-right standing in original actions rather than in declaratory-judgment actions:

> Since the Supreme Court of Ohio does not have original jurisdiction over actions for declaratory judgment, the only situations in which the Supreme Court of Ohio will initially find public-right standing will be original actions in mandamus or prohibition challenging the constitutionality of a statute. This is not the same as a rule permitting public-right standing only in original actions.

2012-Ohio-2655, 973 N.E.2d 307, ¶ 16 (10th Dist.).

{¶ 42} The majority engages in circular reasoning when it states that Article IV, Section 4(B) of the Ohio Constitution prevents the appellants from asserting their claims in common pleas court. Article IV, Section 4(B) states:

> The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law.

{¶ 43} The majority argues that a cause is justiciable only if the plaintiff has standing, and that if a common pleas court proceeds in an action where the plaintiff lacks standing, that court violates the justiciability requirement of the Ohio Constitution. But the appellants here do not lack standing—they have

public-right standing. Their cause is therefore justiciable. "[T]he public action is fully conceived in Ohio as a means to vindicate the general public interest." *Sheward,* 86 Ohio St.3d at 473, 715 N.E.2d 1062.

**{¶ 44}** Finally, the majority characterizes the JobsOhio legislation as not rising to the level of importance that a public-right case requires. This court's own docket suggests otherwise. The General Assembly thought that a resolution of the constitutionality of the JobsOhio legislation was important enough to create, through Section 3 of 2011 Am.Sub.H.B. No. 1 ("H.B. 1"), "exclusive, original jurisdiction" in this court to quickly deal with constitutional claims brought against the legislation—it installed a 60-day statute of limitations running from the effective date of the act. In *ProgressOhio.org,* this court declared Section 3 of H.B. 1 unconstitutional. 129 Ohio St.3d 449, 2011-Ohio-4101, 953 N.E.2d 329, ¶ 5. However, during the pendency of *ProgressOhio.org,* the General Assembly passed 2011 Am.Sub.H.B. 153 ("H.B. 153"), which put in place another method for contesting the constitutionality of JobsOhio: in the common pleas court of Franklin County, with a statute of limitations for bringing claims within 90 days after the effective date of the statute. R.C. 187.09(B). In ProgressOhio.org, this court helpfully instructed the petitioners—the same petitioners as in this case—that the provisions of H.B. 153 "provide a remedy for petitioners to institute an action challenging the constitutionality of amended R.C. 187.01 et seq. by way of an action in the Franklin County Court of Common Pleas." 129 Ohio St.3d 449, 2011-Ohio-4101, 953 N.E.2d 329, ¶ 6. Today, we see how well that advice worked out.

**{¶ 45}** In August 2012, JobsOhio itself was here itself seeking relief in mandamus. It requested that this court rule on constitutional questions regarding the legitimacy of the JobsOhio legislation, H.B. 1 and 153. Director Goodman of the Department of Commerce refused to execute the franchise-and-transfer agreement necessary to grant JobsOhio a franchise on the state's liquor business,

claiming that he could not execute the agreement until this court addressed the merits of constitutional claims against the legislation. *JobsOhio,* 133 Ohio St.3d 297, 2012-Ohio-4425, 978 N.E.2d 153, ¶ 9. JobsOhio's complaint in mandamus sought a writ that would find the JobsOhio legislation constitutional and order Goodman to exercise the franchise-and-transfer agreement. *Id.*, ¶ 10. The complaint focused on seven constitutional concerns:

> (1) Whether the JobsOhio Act violates Article XIII, Section 1, which forbids the General Assembly from conferring corporate powers via special act;
>
> (2) Whether the JobsOhio Act violates Article XIII, Section 2, which requires all corporations to be formed under the general laws;
>
> (3) Whether the JobsOhio Act violates Article I, Section 16, which requires the courts to be open so injured parties may obtain a remedy by due process;
>
> (4) Whether the Legislation authorizes the State to lend credit to a private corporation, in violation of Article VIII, Section 4;
>
> (5) Whether the Transfer Act would require legislative appropriations extending past a biennium, in violation of Article II, Section 22;
>
> (6) Whether the Transfer Act would result in the State's issuing debt in excess of limits provided in Article VIII; and
>
> (7) Whether Am. Sub. H.B. 153 violates the "one-subject rule" of Article II, Section 15.

Complaint at ¶ 44, *JobsOhio,* case No. 2012-1356, available at http://www.sconet.state.oh.us/pdf_viewer/pdf_viewer.aspx?pdf=712126.pdf.

**{¶ 46}** But this court held that the true object of the claim brought by JobsOhio was a declaratory judgment that this court lacked the jurisdiction to grant. *JobsOhio,* ¶ 14. Further, this court held that JobsOhio had "an adequate remedy by way of a declaratory-judgment action in common pleas court to raise its claim that H.B. 1 and 153 are constitutional." *Id.*, ¶ 15.

**{¶ 47}** It is clear that both the governor and the General Assembly were fully aware that the JobsOhio legislation might exceed the boundaries of what is constitutionally permissible or that the threat of a finding of unconstitutionality could taint the program. They sought, through legislation and through lawsuit, our timely review so that any infirmities could be corrected either legislatively or, if necessary, by way of constitutional amendment. That we failed to act timely does not mean that review is no longer important. It simply means that if we now find the legislative scheme unconstitutional, a fix becomes messy.

**{¶ 48}** We should be mindful of history when considering whether "the issues sought to be litigated in this case are of such a high order of public concern as to justify allowing this action as a public action." *Sheward,* 86 Ohio St.3d at 474, 715 N.E.2d 1062. Many of the claims brought by the appellants involve Articles VIII and XIII of the Ohio Constitution. Those provisions were enacted in response to the issues that generated the call for a constitutional convention in 1850-1851, the convention that created the Constitution of 1851, which is the bedrock of Ohio law; it has been amended but remains our foundational document. In *C.I.V.I.C. Group v. Warren,* 88 Ohio St.3d 37, 39-40, 723 N.E.2d 106 (2000), this court explained some of the history behind Article VIII, Section 4:

"Since the state's own resources were limited (at least at first), the legislature relied heavily on private enterprise to build and operate roads, bridges, ferries, canals and railroads. Most of the canal system was financed directly by the state, resulting in debts of $16 million. In the 1830's the state and local governments shifted to a policy of financing turnpike, canal and railroad companies by lending credit or purchasing stock. Insofar as an effective transportation network sprang into being in a remarkably short time, these practices had the desired result. But, they also had undesirable results: they put the state's money and credit at risk in business schemes that often were risky at best, and the demonstrated willingness of the legislature and local bodies to use them was an open invitation for private interests to dip into the public till. Many of these companies failed, the public debt burgeoned as a consequence, and by 1850 the burden was more than the taxpayers could tolerate. This section was adopted to put a halt to these practices." [Editorial Comment to Section 4, Article VIII] Baldwin's Ohio Revised Code Annotated (1993) 202.

The climate of the times was agitation and anger over the imposition of tax burdens on the citizens for the benefit of private corporations and for the public losses incurred when subsidized corporations failed. Gold [Public Aid to Private Enterprises under the Ohio Constitution: Section 4, 6, and 13 of Article VIII in Historical Perspective], 16 Toledo Law Review [405] at 411 [(1985)].

{¶ 49} Ohio was part of a national trend: "Between 1842 and 1852, eleven states adopted new constitutions, simultaneously creating procedures for

issuing government debt and for chartering corporations through general incorporation acts." Wallis, *Constitutions, Corporations and Corruption: American States and Constitutional Change, 1842 to 1852,* 65 J.Econ.Hist. 211 (2005). These states were emerging from crises of public debt and corruption. This emergence in Ohio has been described as follows:

> It was the period when the people awakened to consciousness of the state and that the state was a unit of the individuals. This consciousness came about largely as the result of the mad rush to rob the state treasury and heap up debts to be paid by generations yet unborn.
>
> * * *
>
> Finally, the demand for relief grew so strong that, in 1849, the legislature was compelled to allow people to vote on the question of making a new Constitution. It carried, and the convention met.

Isaac Franklin Patterson, *The Constitutions of Ohio,* 18-19 (1912).

{¶ 50} The issues the appellants raise concern the structure of government rather than individual rights. The fact that those issues do not lead to an injury to an individual should not prevent this court from ensuring that the principles and requirements of those constitutional provisions are maintained. By doing so, we implicitly recognize the standing of our founders. This court bears a responsibility to today's citizens and to the framers to answer the questions the appellants pose.

{¶ 51} This case presents issues easily as important as those involved in the Medicaid expansion case, *State ex rel. Cleveland Right to Life v. State of Ohio Controlling Bd.*, 138 Ohio St.3d 57, 2013-Ohio-5632, 3 N.E.3d 185, where this court dealt with the question "Did the Ohio Controlling Board violate R.C. 127.17

by approving the Ohio Department of Medicaid's request for increased appropriation authority for the Hospital Care Assurance Match Fund?" *Id.*, ¶ 4. This court answered that question without even addressing the respondents' argument that the relators lacked standing.

{¶ 52} Today, this court ensures that no court will ever address the question of the constitutionality of the JobsOhio legislation. Neither the state, nor its counsel, nor the majority opinion has been able to conjure a realistic example of a person or entity that would have the requisite standing and inclination to bring a claim. Ohioans will never know whether their government is violating the constitution. Apparently, they do not deserve to know.

{¶ 53} It is understandable that once the bonds have been sold and the program is up and running, neither the governor nor the legislature wishes to have our review. We, however, should not compound past errors in judgment by making another momentous error and limiting Ohio citizens' access to our court to question the constitutionality of legislation establishing the state's direct involvement into the finances of private corporations. It is a limitation that will live far beyond this present controversy. This decision will be the lodestar opinion offered as the reason to block judicial review of constitutionally questionable legislation for decades to come.

{¶ 54} Across our state, in every county there is a courthouse; many of them are historic buildings that sit in the center of town and are the center of civic life. In those courthouses are dedicated staff and judges who have sworn to "administer justice without respect to persons," R.C. 3.23; there, no lobbyists, no connections, no special relationships are necessary before a citizen can be heard. Today, we slam the doors on all those courthouses, denying Ohioans the opportunity to discover whether their government has been true to the Constitution.

{¶ 55} On the north side of this court's own building, in the reflecting pool, granite words have been installed by the artist Malcolm Cochran in a piece called "In Principle and In Practice." The words are Reason, Honor, Wisdom, Compassion, Justice, Truth, Equity, Peace, Integrity, and Honesty. Mr. Cochran would have been more accurate using just six of those letters: "We Pass."

O'NEILL, J., concurs in the foregoing opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 56} I join Justice Pfeifer's well-reasoned dissent. Hundreds of millions of dollars in public funds are being funneled into a dark hole to be disbursed without public scrutiny, and the highest court in the land is looking the other way. The Supreme Court of Ohio is the last house on the street, and passing on this case is an abdication of our duty as protectors of the Constitution.

{¶ 57} The risks presented by the court's failure to act today are obvious, preventable, and unnecessary. They are obvious, because it is alleged that hundreds of millions of taxpayer dollars are being spent in direct violation of the Ohio Constitution. They are preventable, because as Justice Pfeifer correctly observes, the legislative scheme implemented does not foreclose a remedy—it simply means that any remedy will be messy.

{¶ 58} And ultimately, those risks are unnecessary. The governor and the Ohio General Assembly may very well be right here. Maybe it is permissible to permit a private entity to spend hundreds of millions of taxpayer dollars without the annoyance of public audits and the state auditor asking an occasional question. Maybe this new-era form of governmental accountability does not violate Ohio's Constitution. But unless we examine the issue, the people of Ohio will never have an answer to that question. It is simply shameful that the court has refused to do its job.

**{¶ 59}** Today's ruling brings the triumph of form over substance to a whole new level. And although this court has once again dodged the merits of this case, I have little doubt that it will be back. When that time comes, it is likely the economic loss and damage to public confidence will be substantial. It is never too late to do the right thing. What we are doing here is simply wrong.

————————————

1851 Center for Constitutional Law and Maurice A. Thompson; McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, and J. Corey Colombo, for appellant ProgressOhio.org, Inc.

Michael J. Skindell, pro se.

Dennis E. Murray Jr., pro se.

Squire Sanders (US), L.L.P., and Aneca E. Lasley; Organ Cole & Stock, L.L.P., and Douglas R. Cole, for appellee JobsOhio.

Michael DeWine, Attorney General, Michael J. Hendershot, Chief Deputy Solicitor, Stephen P. Carney, Deputy Solicitor, and Pearl M. Chin, Assistant Attorney General, for appellees Governor John R. Kasich, Christiane Schmenk, Timothy S. Keen, and Treasurer Josh Mandel.

Linda K. Fiely; Kalniz, Iorio & Feldstein Co., L.P.A., and Christine Reardon, urging reversal for amicus curiae Ohio Education Association.

Victoria E. Ullman, pro se, urging reversal as amicus curiae.

Black McCuskey Souers & Arbough, L.P.A., and Thomas W. Connors, urging reversal for amicus curiae American Policy Roundtable d.b.a. Ohio Roundtable.

Shumaker, Loop & Kendrick, L.L.P., and Michael A. Snyder, urging affirmance for amici curiae Thomas Niehaus and Mark Wagoner.

Jones Day and Chad A. Readler, urging affirmance for amici curiae Jonathan H. Adler, Bradford D. Mank, Andrew S. Pollis, Michael E. Solimine, Cassandra Burke Robertson, Lee J. Strang, and Christopher J. Walker.

_____