[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Repp v. Best*, Slip Opinion No. 2023-Ohio-3924.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3924

[THE STATE EX REL.] REPP *v.* BEST ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Repp v. Best*, Slip Opinion No. 2023-Ohio-3924.]**

*Quo warranto—Prohibition—Relator failed to allege facts showing that judicial office is being unlawfully held and that he was entitled to hold the office—Relator's suspension from practice of law created vacancy in judicial office under R.C. 1901.10(B), thereby allowing governor to appoint another person to the office under Article IV, Section 13 of Ohio Constitution—Motion for judgment on pleadings granted and quo warranto claim dismissed—Prohibition claim and other requests for relief dismissed sua sponte.*

(No. 2022-1463—Submitted June 27, 2023—Decided November 2, 2023.)

IN QUO WARRANTO and PROHIBITION.

_____

**Per Curiam.**

{¶ 1} Relator, Mark Repp, was elected in 2019 to a six-year term as a municipal court judge. Less than two years into the term, this court found that Repp had engaged in professional misconduct and suspended him from the practice of law for one year. When Repp then failed to perform his official duties for more than six months, the judicial office he held was declared vacant. The governor appointed Rhonda Best to fill the vacancy.

{¶ 2} Repp seeks a writ of quo warranto to oust Best from the judicial office and to declare him the rightful holder of the office. He also seeks a writ of prohibition against the members of the Tiffin City Council who declared the judicial office vacant, declaratory judgment, and injunctive relief. Respondents, Best, the city of Tiffin, and the city council members, filed an answer to Repp's complaint and a motion for judgment on the pleadings, which Repp opposes. We grant respondents' motion for judgment on the pleadings, dismiss Repp's quo warranto claim, and dismiss all the other claims sua sponte.

**Background**

{¶ 3} In November 2019, Repp was elected to a six-year term as the only full-time judge of the Tiffin-Fostoria Municipal Court. The term expires in December 2025. In November 2021, this court suspended Repp from the practice of law for one year and suspended him from judicial office for the duration of his suspension. *Disciplinary Counsel v. Repp*, 165 Ohio St.3d 582, 2021-Ohio-3923, 180 N.E.3d 1128, ¶ 33. The former chief justice of this court assigned other judges to temporarily serve on the municipal court through November 8, 2022.

{¶ 4} In June 2022, the Tiffin City Council passed an ordinance declaring that under R.C. 1901.10(B), "a vacancy in the office of judge exist[ed]" due to Repp's absence from official duties for more than six consecutive months. In November 2022, Governor Mike DeWine appointed Best to fill the vacancy. An election to fill the unexpired term is scheduled for November 2023.

**{¶ 5}** Repp was reinstated to the practice of law on November 29, 2022. *Disciplinary Counsel v. Repp*, 170 Ohio St.3d 1241, 2022-Ohio-4239, 210 N.E.3d 560, ¶ 3. On November 30, he filed this original action, seeking a writ of quo warranto to oust Best from office. He argues that his suspension from the practice of law did not create a vacancy in the judicial office within the meaning of R.C. 1901.10(B). He also seeks a writ of prohibition, declaratory judgment, and injunctive relief. Respondents filed an answer to Repp's complaint and a motion for judgment on the pleadings. This court then directed the parties to file supplemental briefs addressing the following question:

> When a judge is absent from office as result of a six-month suspension from the practice of law, does that suspension result in a R.C. 1901.10 "vacancy," given the removal procedures in Ohio Constitution, Article II, Section 23; Ohio Constitution, Article IV, Section 17; and R.C. 3.07 through R.C. 3.10?

169 Ohio St.3d 1478, 2023-Ohio-1027, 206 N.E.3d 716.

**Analysis**

*Quo warranto*

**{¶ 6}** To state a claim for a writ of quo warranto here, Repp must allege facts showing that the judicial office is being unlawfully held and exercised by Best and that he is entitled to hold the office. *See State ex rel. Paluf v. Feneli*, 69 Ohio St.3d 138, 141, 630 N.E.2d 708 (1994). The sole issue is whether Repp's suspension from the practice of law created a vacancy in the judicial office under R.C. 1901.10(B), thereby allowing the governor to appoint Best to the office under Article IV, Section 13 of the Ohio Constitution. "A vacancy in the office of [municipal-court] judge exists upon the death, resignation, forfeiture, removal from office, or absence from official duties for a period of six consecutive months * * * of

the judge * * *." R.C. 1901.10(B). "A vacancy resulting from the absence of a judge from official duties for a period of six consecutive months shall be determined and declared by the legislative authority." *Id.*

{¶ 7} Repp does not dispute that the Tiffin City Council is the appropriate legislative authority to determine and declare a vacancy resulting from a judge's six-month absence from the Tiffin-Fostoria Municipal Court or that he had been absent from his official duties for more than six months when the city council declared him absent. He argues, however, that R.C. 1901.10(B) does not apply here because the statute does not expressly state that a vacancy may arise when a municipal-court judge is unavailable due to a suspension. We reject this argument because nothing in R.C. 1901.10(B) suggests that the reason for a judge's absence is relevant to its provisions. Under the statute, it matters only whether the judge was absent from his or her official duties for at least six consecutive months.

{¶ 8} According to Repp, his argument is bolstered by R.C. 1901.121(A)(1), which provides:

> If a vacancy occurs in the office of a judge of a municipal court that consists of only one judge or if the judge of a municipal court of that nature is incapacitated or unavailable due to disqualification, suspension, or recusal, the chief justice of the supreme court may assign a sitting judge of another court of record or a retired judge of a court of record to temporarily serve on the court * * *.

Repp correctly observes that R.C. 1901.121(A)(1) differentiates between a vacancy in a judicial office and a judge's unavailability due to suspension. Emphasizing this distinction, he insists that the city council could not have properly declared a vacancy in the judicial office when he was unavailable due to suspension. But the statute

4

does not describe mutually exclusive circumstances. In fact, by operation of R.C. 1901.10(B), one circumstance (a judge's unavailability) may—but does not always—lead to the other (the vacancy of a judicial office). Here, Repp's persistent unavailability for six months due to his suspension caused a vacancy in the judicial office to exist under R.C. 1901.10(B).

{¶ 9} Repp also argues that there was no vacancy in the judicial office under R.C. 1901.10(B), because the former chief justice of this court assigned other judges to temporarily serve on the municipal court during his suspension. This argument overlooks the plain language of R.C. 1901.10(B), which provides that a vacancy existed when "the judge"—that is, Repp—was absent from his official duties for six consecutive months. The former chief justice's assignments of other judges "to temporarily serve on the court," R.C. 1901.121(A)(1), did not forgive Repp's absence from his official duties or fill the judicial office.

{¶ 10} Repp further argues that the city council's declaration of a vacancy under R.C. 1901.10(B) *removed* him from office. He contends that R.C. 1901.10(B) and the city council's ordinance declaring the vacancy violate the principle of separation of powers and infringe on this court's authority to regulate the practice of law under Article IV, Sections 2(B)(1)(g) and 5(B) of the Ohio Constitution. Section 2(B)(1)(g) gives this court original jurisdiction over "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Section 5(B) requires this court to "make rules governing the admission to the practice of law and discipline of persons so admitted."

{¶ 11} Repp's argument lacks merit because the city council did not remove him from office. "Remove" means "to force (one) to leave a place or to go away," as in "to dismiss from office." *Webster's Third New International Dictionary* 1921 (2002). The city council did not find that Repp had engaged in wrongdoing or force him out of office. Rather, it "determined and declared" under R.C. 1901.10(B) that

Repp had not performed his official duties for six consecutive months. Accordingly, we hold that Repp has not shown that R.C. 1901.10(B) or the city council's ordinance infringes on this court's exclusive jurisdiction to regulate the practice of law.

{¶ 12} Because the city council did not remove Repp from office, we answer the supplemental-briefing question in the affirmative. If a judge is absent from his or her official duties for at least six months—for whatever reason—the appropriate legislative authority is allowed to declare the judicial office vacant under R.C. 1901.10(B). When a legislative authority makes such a declaration, the procedures in Article II, Section 23 and Article IV, Section 17 of the Ohio Constitution and R.C. 3.07 through R.C. 3.10—all allowing for the forcible removal of a person from office—do not come into play.

{¶ 13} Repp argues that the city council's declaration of a vacancy was an act of removal, but that conclusion has no foundation in R.C. 1901.10(B). In substance, Repp is asking this court to create an exception to the statute, suggesting that his absence from his official duties was not a true absence under the statute because it was involuntary. But R.C. 1901.10(B) provides that a vacancy exists upon the judge's "death, resignation, forfeiture, removal from office, or absence from official duties for a period of six consecutive months." There are several ways that a judicial office may become vacant—some by the judge's choice, some not. Under the statute, when the judge has been absent from his or her official duties for six consecutive months, a vacancy in the judicial office exists. The reason for the judge's absence does not matter.

{¶ 14} As a final matter, Repp argues that R.C. 1901.10(B) is unconstitutional because it allowed for his removal from office without the due-process protections afforded by several constitutional and statutory provisions. We reject this argument for two reasons. First, as discussed above, the city council did not remove Repp; it merely found that he had been absent from his official duties for

six months. This quo warranto case affords Repp due process to contest the city council's action. And second, Repp was afforded due process through the disciplinary process. He was given a full opportunity to answer the disciplinary complaint against him and to be heard before he was suspended from the practice of law.

{¶ 15} Accordingly, we grant respondents' motion for judgment on the pleadings and dismiss Repp's quo warranto claim.

*Other claims*

{¶ 16} Respondents' motion for judgment on the pleadings does not address Repp's prohibition claim or his other requests for relief. We dismiss all the other claims in our review under S.Ct.Prac.R. 12.04(C).

{¶ 17} Repp seeks a writ of prohibition against the city and its council members. The "first and fundamental element" of a prohibition claim is the exercise of judicial or quasi-judicial power. *State ex rel. Save Your Courthouse Commt. v. Medina*, 157 Ohio St.3d 423, 2019-Ohio-3737, 137 N.E.3d 1118, ¶ 26. Repp alleges that the city council exercised quasi-judicial power by removing him from office. But "quasi-judicial authority" refers to "the power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial." *State ex rel. Wright v. Ohio Bur. of Motor Vehicles*, 87 Ohio St.3d 184, 186, 718 N.E.2d 908 (1999). "When a public entity takes official action but does not conduct proceedings akin to a judicial trial, prohibition will not issue." *Save Your Courthouse Commt.* at ¶ 27. Repp, therefore, fails to state a claim for a writ of prohibition.

{¶ 18} Repp also asks us to declare that R.C. 1901.10(B) is unconstitutional and that the city council's ordinance is invalid or unconstitutional. We do not have original jurisdiction over declaratory-judgment claims. *State ex rel. JobsOhio v. Goodman*, 133 Ohio St.3d 297, 2012-Ohio-4425, 978 N.E.2d 153, ¶ 14. Repp also asks for an order "prohibiting further implementation and execution of the

Ordinance." But we lack original jurisdiction to grant a prohibitory injunction. *State ex rel. Esarco v. Youngstown City Council*, 116 Ohio St.3d 131, 2007-Ohio-5699, 876 N.E.2d 953, ¶ 11.

{¶ 19} Accordingly, we sua sponte dismiss the complaint to the extent it seeks a writ of prohibition, declaratory judgment, or injunctive relief.

### Conclusion

{¶ 20} For the reasons stated above, we grant respondents' motion for judgment on the pleadings and dismiss Repp's quo warranto claim. We dismiss all the other claims sua sponte.

Cause dismissed.

FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, C.J., dissents, with an opinion joined by DETERS, J.

DEWINE, J., dissents, with an opinion joined by KENNEDY, C.J., and DETERS, J.

_____

**KENNEDY, C.J., dissenting.**

{¶ 21} I agree with the other dissenting opinion's analysis. I write separately to make a few points.

{¶ 22} As the other dissent notes, the Ohio Constitution provides three ways that Ohio judges may be removed from office. First adopted in the 1851 Constitution, Article IV, Section 17 allows judges to be removed by a concurrent resolution passed by a two-thirds vote of each house of the General Assembly. Also adopted in 1851, Article II, Section 24 states that judges "may be impeached for any misdemeanor in office." And in 1912, the people of Ohio adopted Article II, Section 38, which empowers the General Assembly to pass laws providing for the prompt removal of judges from office "for any misconduct involving moral turpitude or *for other cause provided by law*." (Emphasis added.) However, as the

8

other dissent points out, a statute enacted pursuant to Section 38 must provide for removal of a judge "upon complaint and hearing."

{¶ 23} At issue in this case is R.C. 1901.10(B), which governs when a vacancy in the office of municipal-court judge occurs, including an "absence from official duties for a period of six consecutive months" as "determined and declared by the legislative authority." This language has been substantively the same since it was first enacted as Section 1590 of the General Code in 1951. *See* Am.S.B. No. 14, 124 Ohio Laws 589, 596.

{¶ 24} Initially, it is unclear whether the General Assembly has the authority to decide that a judicial office is vacant based on an absence for six months. Article IV, Section 13 of the Ohio Constitution provides for the filling of a judicial office that is vacant, but it neither says when a judicial office is vacant nor that an office may be deemed vacant "as provided by law." By comparison, Article III, Section 17 states that a vacancy occurs in the office of governor or lieutenant governor "because of the death, conviction on impeachment, resignation, or removal of the persons elected to those offices." Absence from official duties does not appear to result in a vacancy in the office of governor or lieutenant governor.

{¶ 25} Ultimately, it is not necessary to decide whether the General Assembly has the authority to enact legislation under which a judicial office may be deemed vacant because of an absence from official duties. R.C. 1901.10(B) goes further than just doing that. It says that the legislative authority shall determine and declare when "[a] vacancy resulting from the absence of a judge from official duties for a period of six consecutive month" exists. As the other dissenting opinion recognizes, this essentially provides for the *removal* of a sitting judge. That is, the judge continues to hold office notwithstanding an absence from official duties for six consecutive months until the legislative authority takes action to determine and declare that the office is vacant. This statutory removal process

is unconstitutional. It could only be enacted under authority of Article II, Section 38 of the Ohio Constitution, yet R.C. 1901.10(B) does not provide a "complaint and hearing" for determining and declaring a judicial office vacant as is expressly required by Section 38.

{¶ 26} We are left with R.C. 1901.121(A)(1), which provides for the chief justice of the Ohio Supreme Court to assign a sitting judge or a retired judge to temporarily serve on a single-judge municipal court when there is a temporary vacancy because a judge is "unavailable due to disqualification, suspension, or recusal." In this case, relator, Judge Mark Repp, alleges, and the respondents admit, that the former chief justice appointed acting judges to take Judge Repp's place while he served his suspension. And because Judge Repp was not legally removed from office under one of the three mechanisms provided by the Ohio Constitution, he was eligible to retake his seat when his suspension from the practice of law terminated.

{¶ 27} For these reasons, I would grant a peremptory writ of quo warranto declaring that Judge Repp is the rightful holder of the office of judge of the Tiffin-Fostoria Municipal Court. Because the majority does not do that, I dissent.

DETERS, J., concurs in the foregoing opinion.

_____

**DEWINE, J., dissenting.**

{¶ 28} The Ohio Constitution sets rules about how elected judges may be removed from office. The question in this case is whether a judge may be removed through procedures other than those set forth in the Constitution. I would hold that he may not be. Because we are bound to follow the Constitution, I would grant the writ of quo warranto. I dissent from the majority's decision to do otherwise.

**Methods of Removal Established by the Ohio Constitution**

{¶ 29} The Ohio Constitution establishes three methods for the removal of judges from office. All require some type of adjudicatory process. First, judges

"may be impeached for any misdemeanor in office" by a majority of the House of Representatives. Ohio Constitution, Article II, Sections 23 and 24. Impeachments shall be tried by the Senate, Ohio Constitution, Article II, Section 23, and a judge "shall be liable to indictment, trial, and judgment," Ohio Constitution, Article II, Section 24. A two-thirds vote in the Senate is required for conviction. Ohio Constitution, Article II, Section 23. "[J]udgment shall not extend further than removal from office, and disqualification to hold" public office. Ohio Constitution, Article II, Section 24.

{¶ 30} Second, judges may be removed from office through a concurrent resolution passed by a two-thirds vote of each house of the General Assembly. Ohio Constitution, Article IV, Section 17. This method of removal requires that a complaint be filed and that the judge be provided with notice of the complaint and an opportunity to be heard. *Id*.

{¶ 31} Finally, the Constitution authorizes the legislature to adopt laws "providing for the prompt removal from office, *upon complaint and hearing*, of all officers, including * * * judges" for "misconduct involving moral turpitude or for other cause provided by law." (Emphasis added.) Ohio Constitution, Article II, Section 38. These laws are "in addition to impeachment or other method[s] of removal authorized by the constitution." *Id.*

{¶ 32} Exercising this authority, the legislature adopted an adjudicatory removal process in R.C. 3.07 through 3.10. "Any person holding office in this state * * * who willfully and flagrantly exercises authority or power not authorized by law, refuses or willfully neglects to enforce the law or to perform any official duty imposed upon him by law, or is guilty of gross neglect of duty, gross immorality, drunkenness, misfeasance, malfeasance, or nonfeasance is guilty of misconduct in office" and may be removed from office. R.C. 3.07. These removal proceedings begin with the filing of a complaint in the common pleas court of the county in which the judge resides (except when the judge is a common-pleas-court judge).

R.C. 3.08. The complaint must be signed by at least 15 percent of the qualified voters of the political subdivision in which the judge holds office. *Id.* The removal proceedings are to be tried by a judge unless a jury is demanded. *Id.* If a jury is demanded, at least nine members of the jury must find that at least one count of the complaint is true to remove the judge from office. *Id.* If a verdict of removal is entered, the judge "shall have judgment of forfeiture of said office with all its emoluments entered thereon against him, creating thereby in said office a vacancy to be filled as prescribed by law." R.C. 3.07.

### The Removal of Judge Repp

{¶ 33} Judge Repp was not removed through any of these three constitutionally prescribed means. Instead, this court suspended him from the practice of law for one year. *See Disciplinary Counsel v. Repp*, 165 Ohio St.3d 582, 2021-Ohio-3923, 180 N.E.3d 1128, ¶ 33. Then, the Tiffin City Council declared a vacancy for his position and the governor appointed a replacement. The majority goes along with this. I don't see how we can.

### The Majority Opinion

{¶ 34} The majority tries to get around the constitutional requirements by relying on R.C. 1901.10(B). That provision provides:

> A vacancy in the office of judge exists upon the death, resignation, forfeiture, removal from office, or absence from official duties for a period of six consecutive months, as determined under this section, of the judge and also by reason of the expiration of the term of an incumbent when no successor has been elected or qualified. A vacancy resulting from the absence of a judge from official duties for a period of six consecutive months shall be determined and declared by the legislative authority.

The majority reasons that as a result of our suspension of Judge Repp, he was absent from his official duties for six months, and therefore the Tiffin City Council was authorized to declare a vacancy in the office. Under this logic, because there was a vacancy, the governor had the authority to fill the position. *See* Ohio Constitution, Article IV, Section 13 ("In case the office of any judge shall become vacant, before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, until a successor is elected and has qualified * * *").

{¶ 35} The problem is that our Constitution has set forth specific procedures by which a judge may be removed from office. None of those procedures were followed here. The majority says that the constitutional provisions "do not come into play" because Judge Repp was absent from his office. Majority opinion, ¶ 12. It contends instead that R.C. 1901.10(B) controls. But, of course, in our system the Constitution trumps statutory law. *See State v. Saffell*, 35 Ohio St.3d 90, 92, 518 N.E.2d 934 (1988) (holding that a trial judge was not "required to request the assignment of a visiting judge pursuant to R.C. 1901.10" because "assignment of such visiting judges is primarily and constitutionally within the discretion of the Chief Justice of this court"). When the Constitution charts a course that must be followed, the legislature cannot simply create an alternative one. *See State ex rel. Weinberger v. Miller*, 87 Ohio St. 12, 26-27, 99 N.E. 1078 (1912) ("[T]he written Constitution of the state is the paramount law, and * * * it is the duty of the court to sustain the paramount law and refuse to enforce any and all legislation in contravention thereof. Any other course would lead to the destruction of the Constitution"); *Switzer v. State ex rel. Silvey*, 103 Ohio St. 306, 312, 133 N.E. 552 (1921) ("Where Constitutions speak, statutes should be silent").

{¶ 36} The Constitution does allow the legislature to enact laws providing for the removal of elected officials, including judges. But that authority comes with an important caveat: the General Assembly may only enact laws providing for

13

removal "upon complaint and hearing," Ohio Constitution, Article II, Section 38. Because R.C. 1901.10(B) does not contain a complaint and hearing procedure for declaring a vacancy in the office of judge, it cannot be a source of authority for the removal of a judge from office. Moreover, by authorizing the legislature to enact laws that provide for removal through "complaint and hearing," the Constitution necessarily prohibits the legislature from enacting laws that provide for removal without "complaint and hearing." *See State ex rel. Atty. Gen. v. Davis*, 55 Ohio St. 15, 22, 44 N.E. 511 (1896) ("The provisions of the constitution and enactments in conflict with them cannot stand together").

{¶ 37} The text of R.C. 1901.10(B) makes clear that the statute was not meant to be a source of authority for removing judges. Rather, the statute enumerates "forfeiture" and "removal from office," among the circumstances that create a vacancy in a judicial office. The three constitutional provisions all explicitly provide for "removal"; R.C. 3.07 through 3.10 provide for both "removal" from and "forfeiture" of office. Thus, R.C. 1901.10(B) provides a mechanism to declare a vacancy once removal has occurred through the constitutional process; it is not a mechanism to sidestep the Constitution.

{¶ 38} The majority says that the "absence from official duties for a period of six consecutive months" provision in R.C. 1901.10(B) applies to any absence regardless of whether the absence was voluntary or involuntary. Majority opinion at ¶ 13. Thus, the majority contends that Judge Repp's involuntary absence resulting from this court's suspension of him triggered the removal power. I disagree with this reading. The explicit provision in R.C. 1901.10(B) for "death, resignation, forfeiture, [and] removal from office" suggests that the "absence from official duties" provision applies only to voluntary absences. But this dispute about statutory construction is largely beside the point. To read the provision as the majority suggests would elevate the statute above the Constitution. And that we cannot do. *See Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803) (because

14

a written constitution is "fundamental and paramount law," "an act of the legislature, repugnant to the constitution, is void").

### Conclusion

{¶ 39} There are three constitutional mechanisms to remove a judge from office: impeachment, concurrent resolution, and a removal proceeding in the common pleas court. None were followed in this case. Because the Constitution trumps statutory law, I would grant the writ of quo warranto. Because the majority does otherwise, I must dissent.

KENNEDY, C.J., and DETERS, J., concur in the foregoing opinion.

––––––––––––––––––

Kegler, Brown, Hill & Ritter Co., L.P.A., and Christopher J. Weber; and Montgomery Jonson, L.L.P., and Lisa M. Zaring, for relator.

Squire Patton Boggs (U.S.), L.L.P., Steven A. Friedman, and Rebecca W. Haverstick, for respondents.

Mayle, L.L.C., Andrew R. Mayle, and Ben Padanilam; and Albrechta & Coble, Ltd., Joseph F. Albrechta, and Chris Liebold, urging dismissal for amicus curiae, Alexandra Orta.

––––––––––––––––––